UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH S. BARONE,

                              Plaintiff,

v.                                               1:21-CV-0131 (GTS/TWD)

THE LAWYERS' FUND FOR CLIENT
PROTECTION; and SUPREME COURT OF
NEW YORK, APPELLATE DIVISION,
THIRD DEPARTMENT,

                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

JOSEPH S. BARONE
  Pro se
155 Augusta Plantation Drive, Apt. U
Myrtle Beach, SC 29579

HON. LETITIA JAMES                       KEITH J. STARLIN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224-0341

GLENN T. SUDDABY, Chief United States District Judge

## AMENDED DECISION and ORDER

Currently before the Court, in this civil rights action filed *pro se* by Joseph S. Barone

("Plaintiff") against The Lawyers' Fund for Client Protection ("Defendant Fund") and the

Supreme Court of New York, Appellate Division, Third Department ("Defendant Third

Department") (collectively, "Defendants"), is Defendants' unopposed motion to dismiss

Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1),

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), insufficient service of process

pursuant to Fed. R. Civ. P. 12(b)(5), and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 7, Attach. 7 [Defs.' Mem. of Law].) For the reasons set forth below, Defendant's motion is granted.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts four claims against the Defendants: (1) a claim against Defendant Third Department for declaratory relief as to one of its previously issued decisions; (2) a claim against Defendants for a denial of procedural due process in violation of the Fourteenth Amendment; (3) a claim against Defendants for a denial of equal protection of law in violation of the Fourteenth Amendment;[1] and (4) a claim against Defendants for a violation of Title II of the Americans with Disabilities Act of 1990 ("ADA").[2] (Dkt. No. 1 [Pl.'s Compl.].)

Generally, in support of these claims, Plaintiff's Complaint alleges as follows: (1) for approximately twenty years, Plaintiff served as an anonymous informant for the Federal Bureau of Investigation ("FBI"); (2) Plaintiff was used as an informant for the purposes of providing the FBI with information related to alleged organized crime schemes; (3) while serving as an informant, Plaintiff interacted exclusively with FBI Special Agent Vincent Presutti until 2008 ("SA Presutti"); (4) during his interaction with Plaintiff, SA Presutti noted in approximately 75 status reports that Plaintiff demonstrated "exemplary and unprecedented productiveness;" (5) while serving as informant and interacting with SA Presutti, Plaintiff never (a) provided any

---

[1]    In liberally construing Plaintiff's equal protection claim, the Court construes this claim as being asserted against both Defendants.

[2]    In liberally construing Plaintiff's ADA claim, the Court construes this claim as being asserted against both Defendants.

testimony, (b) wore a wire, (c) revealed his identity or motive to any of the targets of the FBI's investigations, (d) was accused of, or investigated for, any criminal wrongdoing; or (e) requested or received any compensation; (6) in October of 2008, SA Presutti retired from the FBI and Plaintiff began to interact exclusively with Special Agent Mike Trombetta ("SA Trombetta"); (7) Plaintiff continued to serve as an informant and provide information regarding alleged organized crime schemes; (8) on January 9, 2009, Plaintiff was arrested by the FBI;[3] (9) after Plaintiff's January 2009 arrest, SA Trombetta did not "come to [Plaintiff's] defense to explain that he was had worked as an informant for the FBI;[4] (10) while Plaintiff was incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, his cellmate has recommended that Plaintiff retain Roy Kulcsar ("Kulcsar") as his criminal defense attorney; (11) Plaintiff paid $15,000 to retain Kulcsar; (12) Plaintiff was unaware that, at the time, the Attorney Disciplinary Grievance Committee was investigating Kulcsar for potential fraudulent practices involving client funds; (13) while incarcerated at the MDC, Plaintiff was placed in a form of solitary confinement known as the Special Housing Unit ("SHU") for the purposes of protecting him from physical danger posed by the inmates housed in general population; (14) Plaintiff was held in SHU for approximately fifteen months, which limited his social privileges to only (a) meetings with Kulcsar, (b) one sixty-minute visit per week by his then-fiancé, Shannon Ross ("Ross"), and (c) one fifteen-minute phone call per month; (15) during Plaintiff's meetings with Kulcsar, Kulcsar deceived him into believing that law enforcement would deny him the right to legal counsel by way of freezing his liquid assets; (16) acting on what Kulcsar had told him,

---

[3]   The Court notes that Plaintiff's Complaint does not indicate the offense that led to his arrest on January 9, 2009.

[4]   The Court notes that, according to Plaintiff's Complaint, he was imprisoned "under false charges" based on "activities in which the FBI had authorized."

Plaintiff and Ross spoke with Kulcsar's paralegal, "Nancy," who assured them that, to prevent Plaintiff's liquid assets from being frozen by law enforcement, he could place them into an escrow account or interest on lawyer trust account ("IOLTA"); (17) to convince Plaintiff to transfer his liquid assets, Kulcsar (a) showed false escrow account numbers and statements to Ross, and (b) drafted and executed a handwritten contract which provided that Plaintiff's liquid assets would be placed into escrow, and that, if, at any time, Plaintiff wished to transfer his assets back into his personal accounts, Kulcsar would do so; (18) Plaintiff refused to make Kulcsar his power of attorney, and instead, agreed to make Ross his power of attorney; (19) over the course of time, Ross and Kulcsar met at various banks to transfer Plaintiff's liquid assets into an escrow account; (20) in total, by using "terroristic threats, false reassurances, and extortion," Kulcsar took possession of approximately $182,500 of Plaintiff's liquid assets, $24,000 in legal fees, and $24,500 in personal loans, by way of the following transfers: (a) on April 2, 2009, a $15,000 payment for legal representation, (b) on April 27, 2009, a $21,000 loan to Kulcsar, made via cashier's check, (c) a $1,000 cash loan made to Kulcsar, (d) a $2,500 check that was serving as refund from legal fees that Plaintiff had paid to a different attorney, (e) on June 6, 2009, $9,000 in cash, (f) on June 6, 2009, a $20,000 cashier's check, (g) on June 6, 2009, a $59,000 cashier's check, and (h) on July 3, 2009, an $80,000 cashier's check; (21) in or around April 2010, Plaintiff obtained a new lawyer and fired Kulcsar; (22) at that time, Kulcsar had not returned any of Plaintiff's liquid assets that had been transferred into what Plaintiff believed to be an escrow account; (23) in actuality, Kulcsar had been transferring Plaintiff's liquid assets into his personal business account, effectively embezzling Plaintiff's liquid assets; (24) in July of 2010, Plaintiff was acquitted of the criminal charges brought against him and was subsequently released from custody; (25) in July of 2010, Plaintiff filed an Attorney Disciplinary Grievance Committee

4

complaint against Kulcsar; (26) over an unspecified period of time, Kulcsar repaid a portion of the funds to Plaintiff, but approximately of his once-liquid assets $88,300 remain unaccounted for; (27) in June of 2012, Kulcsar did not appear before the Attorney Disciplinary Grievance Committee to answer to Plaintiff's complaint and was found guilty by default; (28) in June of 2012, Kulcsar was disbarred for extortion and unlawful financial dealings with regard to client funds; (29) in June of 2012, to recover the unpaid outstanding funds that he had transferred to Kulcsar, Plaintiff filed a claim with Defendant Fund; (30) in or around September 2017, Defendant Fund issued a partial denial for recovery as to Plaintiff's claim to recoup funds he had lost resulting from Kulcsar embezzlement; (31) in January of 2018, Defendant Fund denied Plaintiff's claim in its entirety, citing Plaintiff's involvement in allowing Kulcsar to conceal his liquid assets; (32) at no time did Plaintiff conspire with Kulcsar to conceal any of his liquid assets from the government; (33) at some point, Plaintiff filed an appeal from Defendant Fund's denial of his claim; (34) Plaintiff's appeal was subsequently denied; (35) Ross "swears under oath" that Plaintiff did not conspire with Kulcsar to conceal any assets; (36) in coming to its decision, Defendant Fund ignored evidence presented by Plaintiff; and (37) Plaintiff's July 2010 acquittal of criminal charges served as motivation for Defendant Fund to fabricate a justification to deny his claim.  (*Id.*)

## B.    Parties' Briefing on Defendants' Motion

### 1.    Defendants' Memorandum of Law

In support of their motion to dismiss, Defendants assert seven arguments: (1) the Court must dismiss Plaintiff's Complaint because he failed to properly serve Defendants with the Summons and Complaint; (2) the Court must dismiss Plaintiff's declaratory relief claim, procedural due process claim, and equal protection claim, because the Eleventh Amendment

provides Defendants with sovereign immunity; (3) the Court must dismiss Plaintiff's Complaint because Defendants are entitled to absolute judicial immunity; (4) the Court must dismiss Plaintiff's procedural due process claim and equal protection claim because he is unable to seek damages pursuant to 42 U.S.C. § 1983 against Defendants; (5) the Court must dismiss Plaintiff's Complaint because his claims are barred by the *Rooker-Feldman* Doctrine; (6) the Court must dismiss Plaintiff's Complaint because he has not alleged facts plausibly suggesting that his civil rights had been violated; and (7) the Court must dismiss Plaintiff's Complaint because Defendants are entitled to qualified immunity.  (Dkt. No. 7, Attach. 12, at 8-25 [Defs.' Mem. of Law].)

### 2.    Relevant Procedural History

On June 22, 2012, Plaintiff filed an application for reimbursement from Defendant Fund.[5]  Specifically, Plaintiff sought reimbursement from Defendant Fund for funds that Kulcsar had stolen.[6]  On June 30, 2017, Defendant Fund issued a partial denial of Plaintiff's reimbursement claims.  On December 22, 2017, Defendant Fund denied Plaintiff's remaining claims for reimbursement.  According to Defendant Fund, Plaintiff's claims were denied because of his "own culpable conduct in concealing money with [] Kulcsar in order to prevent the money from being seized by [f]ederal criminal prosecutors . . . ."  On December 30, 2017, Plaintiff requested that Defendant Fund reconsider its earlier determination denying his claims for

---

[5]    The Court notes that, although Plaintiff submitted one application for reimbursement, that application consisted of multiple claims relating to different transactions that Plaintiff had made to Kulcsar.

[6]    The Court notes that Defendant Fund provides "reimbursement to law clients who have lost money or property as a result of a lawyer's dishonest conduct in the practice of law . . . [and serves] as a remedy for law clients who cannot get reimbursement from the lawyer who caused the loss . . . ."  *Frequently Asked Questions*, The Lawyers' Fund for Client Protection (Nov. 5, 2021), www.nylawfund.org/faq.html.

reimbursement.  In March 2018, Defendant Fund's Board of Trustees reconsidered Plaintiff's claims, and subsequently issued an affirmance of its earlier determination on April 6, 2018. (Dkt. No. 7, Attach. 2.)

Plaintiff commenced a proceeding, pursuant to Article 78 of the New York Civil Practice Law and Rules ("Article 78"), in New York State Supreme Court, Albany County, which stemmed from the facts alleged in his Complaint.  (*Id.*)  In his Article 78 petition, Plaintiff sought an order annulling a determination of Defendant Fund that had denied his claims for reimbursement for funds that he had paid to his former disbarred attorney.  (*Id.*)  On February 5, 2019, New York Supreme Court Justice Raymond J. Elliott, III ("Justice Elliott") denied Plaintiff's Article 78 petition.  (*Id.*)  On March 4, 2019, Plaintiff filed a notice of appeal from Justice Elliott's dismissal of his Article 78 petition.  (Dkt. No. 7, Attach. 3.)  However, Plaintiff did not file an appellate brief and the required record documentation; and therefore he failed to perfect his appeal by September 4, 2019.[7]  (Dkt. No. 7, Attach. 12, at 5.)  On April 2, 2020, Plaintiff filed a motion with Defendant Third Department to reinstate his appeal.  (Dkt. No. 7, Attach. 4.)  On June 18, 2020, Defendant Fund filed its opposition to Plaintiff's motion to reinstate.  (Dkt. No. 7, Attach. 5.)  On July 2, 2020, Defendant Third Department denied Plaintiff's motion to reinstate his appeal.  (Dkt. No. 7, Attach. 6.)

### 3.    Plaintiff's Failure to Oppose Defendants' Motion to Dismiss

Pursuant to the Court's Notice to Plaintiff on May 3, 2021, Plaintiff's response in opposition to Defendants' motion to dismiss was due on May 21, 2021.  (Dkt. No. 8.)  However, as of the date of this Amended Decision and Order, Plaintiff has not filed any response papers,

---

[7]     The Court notes that, under 22 N.Y.C.R.R. § 1250.10(a), if "an appellant fails to perfect a civil matter within six months of the date of the notice of appeal . . . , the matter shall be deemed dismissed without further order.

requests for an extension of time, or other documents indicating that he intends to file a response. (*See generally* Docket Sheet.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Submissions by Pro Se Litigants

It is well established in the Second Circuit that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005). Such submissions include not only a *pro se* plaintiff's complaint but his or her memoranda of law and affidavits. *See, e.g.*, *Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2006) (extra-liberally construing *pro se* plaintiff's appellate brief); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (extra-liberally construing *pro se* plaintiff's affidavit supporting his complaint).

### B.     Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**C.** **Legal Standard Governing a Motion to Dismiss for Insufficient Service of Process**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. V. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 [2d Cir. 2005]). If a court determines that the plaintiff failed to establish that service was sufficient, the court can, but is not required to, dismiss the action. *Burdick v. Oswego Cnty., N.Y.*, 15-CV-0353, 2015 WL 6554515, at *3 (N.D.N.Y. Oct. 29, 2015) (D'Agostino, J.). "Alternatively, the court may grant leave to allow the plaintiff to cure the insufficiency." *Sajimi v. City of New York*, 07-CV-3252, 2011 WL 135004, at *3 (E.D.N.Y. Jan. 13, 2011) (internal citations omitted).

Rule 4(c)(1) of the Federal Rules of Civil Procedure provides that, "[a] summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."

Additionally, Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

### D.     Legal Standard Governing a Motion to Dismiss for Lack of Personal Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005); *accord*, *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015).  "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL 503935, at *1 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir. 1999]); *accord*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).  "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *Harris*, 2005 WL 503935, at *1 (citation omitted).

"Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id.* (citation omitted); *accord*, *Best Van Lines, Inc.*, 490 F.3d at 242-43. These due process rights require that Defendants have minimum contacts with the forum state and that the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 [2d Cir. 2006]).  In determining whether the required showing has been made, district courts "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci*,

732 F.3d at 167 (quoting *Chloè v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 [2d Cir.

2010]); *accord*, *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993);

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

"In deciding a pretrial motion to dismiss for a lack of personal jurisdiction, a district court

has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904

(2d Cir. 1981).  Unless a court conducts "a full-blown evidentiary hearing," the plaintiff need

only make "a prima facie showing of jurisdiction through its own affidavits and supporting

materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1

(internal quotation marks and citations omitted).  What this means is that, "prior to discovery, a

plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, legally sufficient

allegations of jurisdiction." *Id.* (internal quotation marks and citations omitted); *accord*, *Penguin

Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) ("Such a [prima facie] showing

entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that,

if credited[,] would suffice to establish jurisdiction over the defendant.'") (quoting *In re

Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 [2d Cir. 2003] [per curium]).  However,

where a defendant "rebuts [a plaintiff's] unsupported allegations with direct highly specific,

testimonial evidence regarding a fact essential to jurisdiction—and plaintiff[] do[es] not counter

that evidence—the allegation may be deemed refuted." *MEE Direct LLC v. Tran Source

Logistics, Inc.*, 12-CV-6916, 2012 WL 6700067, at *2 (S.D.N.Y. Dec. 26, 2012) (citation,

internal quotation marks, and footnote omitted).

### E.      Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[8]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases);

---

[8]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

*Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, with regard to what documents are considered when a dismissal for failure to state a claim is contemplated, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of

14

which the court can take judicial notice for the factual background of the case.[9]

### F.   Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

---

[9]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

G.     **Legal Standards Governing Plaintiff's Claims Under 42 U.S.C. § 1983**

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 [1980] [internal quotations omitted]).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 [1979]).

1.     **Due Process**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Thus, in order to state a Section 1983 claim for violation of one's rights under the Due Process Clause, a plaintiff must first allege that he possesses a liberty or property interest protected by the Constitution or federal statutes.  *Little v. City of New York*, 487 F. Supp.2d 426, 442 (S.D.N.Y. 2007) (citing *Ciambrello v. Cnty. of Nassau*, 292 F. Supp.3d 307, 313 [2d Cir. 2002]).

In addition, where challenging the alleged deprivation of one's procedural due process rights, a plaintiff must allege that he was deprived of a property or liberty interest without having received notice and an opportunity to be heard regarding the deprivation.  *Ceja v. Vacca*, 503 F. App'x 20, 21-22 (2d Cir. 2012) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 [1985]).  Where adequate pre-deprivation and post-deprivation remedies are available under state

law, a party may not prevail on his due process claim under Section 1983. *Rackley v. City of New York*, 186 F. Supp.2d 466, 481-82 (S.D.N.Y. 2002) (citing cases).

When asserting that the deprivation of a liberty or property interest violated one's substantive due process rights, a plaintiff must "demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that . . . interest." *Ruston v. Town of Skaneateles*, 06-CV-0927, 2008 WL 5423038, at *3 (N.D.N.Y. Dec. 24, 2008), *aff'd*, 610 F.3d 55 (2d Cir. 2010) (quoting *Crowley v. Courville*, 76 F.3d 47, 52 [2d Cir. 1996]). Moreover, only government action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" may be challenged as a violation of one's right to substantive due process. *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005).

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws" (*see* U.S. Const. amend. XIV, § 1), "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cnty.*, 705 F. Supp.2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 [1985]).

When challenging the selective enforcement of a law under the Equal Protection Clause, a plaintiff must prove the following (1) compared to others similarly situated, he was selectively treated; and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted).

A.      **Whether the Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claims**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 7, Attach. 12, at 12-13 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

1.      **Absolute and Quasi-Judicial Immunity**

In this case, Plaintiff's claims against Defendant Third Department result from its dismissal of his appeal from Justice Elliott's Decision and Order denying his Article 78 petition. Although Plaintiff's Complaint names the Third Department as a defendant in this action, the Court notes that Presiding Justice Garry, Justice Lynch, Justice Aarons, and Justice Colangelo (collectively, the "Justices") of Defendant Third Department concurred to dismiss Plaintiff's appeal. Therefore, for the purposes of evaluating Defendants' absolute judicial immunity argument as to Defendant Third Department, the Court will treat the Justices' judicial determination as that of Defendant Third Department.

Judges are entitled to absolute immunity for actions taken in their judicial capacity within their jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Huminski v. Corsones*, 386 F.3d 116, 137-38 (2d Cir. 2004); *Gonzalez v. Sharpe*, 06-CV-1023, 2006 WL 2591065, at *2 (N.D.N.Y. Sept. 8, 2006) (Scullin, C.J.).

In determining whether the judge acted within his or her jurisdiction, the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.'" *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (quoting *Maestri v. Jutkofsky*, 860 F.2d 50, 52 [2d Cir. 1988]).

"Whether a judge acted in a 'judicial capacity' depends on the 'nature of the [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations

18

of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"  *Ceparano v. Southampton Justice Court*, 404 F. App'x 537, 539 (2d Cir. 2011) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 [1978]).

Judicial immunity applies even when the judge is accused of acting maliciously or corruptly.  *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54 [1967]).  Moreover, judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."  *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (internal quotation marks omitted).  This immunity is not intended to protect or benefit a malicious or corrupt judge, but rather to protect the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'"  *Huminski*, 396 F.3d at 74 (quoting *Pierson*, 386, U.S. at 554.)

Furthermore, judicial immunity is immunity "from suit, not just immunity from the assessment of damages."  *Mireles*, 502 U.S. at 11.  Similarly, judicial immunity is a bar to injunctive/declaratory relief, not just monetary relief.  *See, e.g.*, Section 309(c) of the Federal Courts Improvement Act, Pub. L. No. 104-317 (1996) (amending 42 U.S.C. § 1983); *Montesano v. New York*, 05-CV-9574, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2008); *Jones v. Newman*, 98-CV-7460, 1999 WL 493429, at *6-7 (S.D.N.Y. June 30, 1999); *Kampfer v. Scullin*, 989 F. Supp. 194, 201 (N.D.N.Y. 1997) (Kahn, J.).  Finally, "[s]tate court judges are entitled to the same immunity from lawsuits resulting from actions taken in their judicial capacity as are federal judges."  *Neroni v. Peebles*, 14-CV-0584, 2014 WL 12768331, at *7 (N.D.N.Y. June 20, 2014) (Suddaby, J.) (citing *Lewittes v. Lobis*, 04-CV-0155, 2004 WL 1854082, at *5 [S.D.N.Y. Aug. 19, 2004]).

The Court finds that the allegations supporting Plaintiff's claims against Defendant Third Department relate to the actions taken by the Justices within the scope of their judicial capacity within their jurisdiction—as judges presiding over Plaintiff's appeal. Therefore, Defendant Third Department is entitled to absolute judicial immunity; and accordingly, the Court lacks subject-matter jurisdiction over Plaintiff's claims against it.

Next, the Court finds that quasi-judicial immunity also precludes Defendant Fund from having to answer Plaintiff's claims. *See Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996) ("Under the doctrine of quasi-judicial immunity, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature."). Here, in conducting its investigation into the veracity of Plaintiff's claims for reimbursement, Defendant Fund functioned in a quasi-judicial capacity. In fact, Defendant Fund was created by N.Y. Fin. Law § 97-t, and its trustees perform quasi-judicial functions. *Saferstein v. Lawyers' Fund for Client Protection*, 142 F. App'x 494, 495 (2d Cir. 2005) (citing 22 N.Y.C.R.R. § 7200.4; *Schettino v. Alter*, 528 N.Y.S.2d 862, 863 [2d Dep't 1988]).

### 2.     *Rooker-Feldman* Doctrine

Alternatively, the Court finds that Plaintiff's claims challenging the state court proceedings appear to be barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* Doctrine, a federal court cannot entertain claims previously decided by a state court or claims that are "inextricably intertwined" with an earlier state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Additionally, the *Rooker-Feldman* doctrine precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state

judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

Here, by filing his claims (which assert violations of procedural due process, equal protection, and the ADA) with this Court, Plaintiff is essentially asking the Court to assume appellate jurisdiction and to overrule the judgment entered by Defendant Third Department. (*See generally* Dkt. No. 1 [Pl.'s Compl.].) In doing so, the *Rooker-Feldman* doctrine applies, which renders this Court without subject-matter jurisdiction over any of Plaintiff's claims. *See Harris v. Hudson*, 216 F. Supp.2d 10, 13 (N.D.N.Y. 2002) (Hurd, J.) ("The *Rooker-Feldman* doctrine stands for the proposition that 'lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments.'"). Therefore, the *Rooker-Feldman* doctrine bars Plaintiff from asserting claims against Defendants in this matter.

Even if the Court had determined it possessed subject-matter jurisdiction over Plaintiff's claims, it would nonetheless be lacking personal jurisdiction over Defendants.

### B.     Whether the Court Alternatively Lacks Personal Jurisdiction Over Defendants

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 7, Attach. 12, at 8-10 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

As discussed above in Part II.D. of this Amended Decision and Order, Fed. R. Civ. P. 4 governs the required procedures for service of process. When a plaintiff fails to comply with the service requirements set forth in Fed. R. Civ. P. 4, a federal court will not exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd.*, 484 U.S. at 104. "Rule 4 is 'to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" *Shabazz v. Johnson City Police Dep't*, 18-CV-0570, 2019

WL 2617016, at *2 (N.D.N.Y. June 26, 2019) (D'Agostino, J.) (quoting *Grammenos v. Lemos*, 457 F.2d 1067, 1070 [2d Cir. 1972]).  Furthermore, "incomplete or improper service will lead the court to dismiss the action *unless it appears that proper service may still be obtained*." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).

In this case, Defendants' argument is two-fold: (1) service of process was insufficient because Defendants were not served with the entire Summons and Complaint; and (2) even if the Summons and Complaint were served in their entirety, service of process was insufficient because it violated New York law by serving the incorrect individuals through the incorrect type of mail delivery.  (Dkt No. 7, Attach. 12, at 8-10 [Defs.' Mem. of Law].)

In support of their first argument—that the Summons and Complaint were incomplete—Defendants point to the declarations of Michael Knight ("Knight") and Sean Morton ("Morton"), Executive Director and Counsel for Defendant Fund and Deputy Clerk of Court for Defendant Third Department, respectively.  (Dkt. Nos. 7, Attach. 7 [Knight Decl.] & 7, Attach. 9 [Morton Decl.].)  According to his declaration, on March 9, 2021, Knight received a hand-delivered package from a process server containing a Summons and Complaint relating to this action.  However, upon inspection, the Complaint was missing pages.  In particular, the Complaint was comprised of only pages 1 through 20, and was missing its signature page, verification, and attachments or exhibits.  (Dkt. No. 7, Attach. 7 [Knight Decl.].)  According to Morton's declaration, the same is true as it relates to the service of process received by Defendant Third Department, with the exception that, it received the package via regular, first-class mail.  (Dkt. No. 7, Attach. 9 [Morton Decl.].)  The Court notes that, after a review of the Docket Sheet, Plaintiff's Complaint is comprised of twenty-seven pages and a five-page attachment containing Ross' declaration.  (Dkt. No. 1 [Pl.'s Compl.].)

22

Under Fed. R. Civ. P. 4(m), if a plaintiff shows good cause for failing to properly serve process, then the court must extend the time for service for an appropriate period.  Here, however, Plaintiff has not provided the court with good cause, or any cause for that matter, for his failure to properly serve Defendants with process.  (*See generally* Docket Sheet.)  Therefore, service of process was insufficient because Defendants were not served with the entire Complaint and its attachment.

In support of their second argument—that service of process violated New York law— Defendants argue that Plaintiff did not serve the proper individuals.  Under Fed. R. Civ. P. 4(e), service may be accomplished pursuant to the law of the state in which service is made.  Fed. R. Civ. P. 4(e).  Relevant here, Fed. R. Civ. P. 4(j) provides as follows:

> A state . . . or any other state-created governmental organization that is subject to suit must be served by . . .  [either] (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j).

Under New York law, service of process must be made in accordance with the procedures set forth in the New York State Civil Practice Law and Rules (the "C.P.L.R.") § 307(2), which provides as follows:

> Personal service on a . . . state agency, which shall be required to obtain personal jurisdiction over such an officer or agency, shall be made by (1) delivering the summons to such officer or the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by [C.P.L.R. § 307(1)].

McKinney C.P.L.R. § 307(2).

Additionally, C.P.L.R. § 312 provides in pertinent part, that "[p]ersonal service upon a court consisting of three or more judges may be made by delivering the summons to any one of them."  In lieu of personal service on a court (as stated in Section 312), C.P.L.R. § 312-a provides in pertinent part, as follows:

> [A] summons and complaint, or summons and notice, or notice of petition and petition may be served by the plaintiff or any other person by mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the summons and complaint, or summons and notice or notice of petition and petition, together with two copies of a statement of service by mail and acknowledgement of receipt . . . with a return envelope, postage prepaid, addressed to the sender.

McKinney C.P.L.R. § 312-a.

As of the date of this Amended Decision and Order, Defendant Third Department is comprised of eight justices.  *The Members of the Court*, Appellate Division Third Judicial Department (Nov. 3, 2021), https://www.nycourts.gov./ad3/Justices.html.  Therefore, in this case, the above-mentioned provisions of the C.P.L.R. related to service of process apply to Defendant Third Department.

Here, Plaintiff failed to serve process on Defendant Third Department as required by C.P.L.R. § 312-a.  In its motion to dismiss, Defendant Third Department appears to imply that service of process through regular, first-class mail is insufficient.  (Dkt. No. 7, Attach. 12, at 9-10 [Defs.' Mem. of Law].)  Based on the acceptable alternative-service methods provided in C.P.L.R. § 312-a, the Court disagrees with Defendant Third Department.  As Morton's declaration states, the Summons and an incomplete version of the Complaint arrived at Defendant Third Department through regular, first-class mail.  Nonetheless, the Court finds that the contents of the package delivered to Defendant Third Department failed to comply with C.P.L.R. § 312-a.  Specifically, Plaintiff failed to include two copies of a statement of service, a

return envelope, and postage prepaid addressed to the sender.  (Dkt. No. 7, Attach. 10.)

For all of the above reasons, the Court finds Plaintiff's service of process to be insufficient as to both Defendants

Date:   December 20, 2021
        Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge